United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 26, 1997 Decided December 19, 1997 

 No. 96-1430

 Orion Communications Limited, 

 Appellant

 v.

 Federal Communications Commission, 

 Appellee

 Biltmore Forest Radio, Inc., et al., 

 Intervenors

 Appeal of an Order of the 

 Federal Communications Commission

 Stephen C. Leckar argued the cause and filed the briefs for 
appellant.

 Daniel M. Armstrong, Associate General Counsel, Federal 
Communications Commission, argued the cause for appellee, 


with whom Gregory M. Christopher, Counsel, was on the 
brief.

 Donald J. Evans, Timothy K. Brady and Robert A. DePont 
were on the brief for intervenors, Biltmore Forest Radio, 
Inc., et al.

 Before: Edwards, Chief Judge, Ginsburg, and Tatel, 
Circuit Judges.

 Opinion for the court filed by Circuit Judge Ginsburg.

 Ginsburg, Circuit Judge: Orion Communications, Ltd. ap-
peals from an order of the Federal Communications Commis-
sion rescinding Orion's interim authority to operate an FM 
station and granting that authority to a consortium of Orion's 
competitors whose license applications the Commission had 
previously rejected. We hold that the FCC acted arbitrarily 
and capriciously and we reverse the Commission's decision.

 I. Background

 In 1990, after a contested hearing, an Administrative Law 
Judge granted the application of Orion Communications, Ltd. 
for a license to operate a new FM station in Biltmore Forest, 
North Carolina. See National Communications Indust., 5 
FCC Rcd 2862 (ALJ 1990). The Federal Communications 
Commission thrice confirmed that grant. See National Com-
munications Indust., 6 FCC Rcd 1978 (Review Bd. 1991); 
National Communications Indust., 7 FCC Rcd 1703 (1992) 
(denying applications for review); Liberty Prod., 7 FCC Rcd 
7581 (1992) (denying petition for reconsideration). In April 
1993, while rejected applicants had still further appeals pend-
ing before the Commission and this court, the FCC issued to 
Orion a construction permit "conditioned on the final outcome 
of Docket 88-577," i.e., the license proceeding, noting that 
"[a]ny construction pursuant to this permit prior to this 
docket becoming final is at the permittee's sole risk." After 
discovering that it could save money by leasing a tower 
rather than building its own, Orion asked the Commission to 
modify its construction permit. In November 1993 the Com-
mission issued a second, modified permit, but only after 


extracting from Orion a promise to begin construction imme-
diately.

 Meanwhile, in December 1993 this court decided Bechtel v. 
FCC, 10 F.3d 875, in which we held that the Commission's use 
of the "integration" criterion in comparative hearings was 
arbitrary and capricious. Shortly thereafter the Commission 
announced that it would "hold[ ] in abeyance the processing of 
applications and the adjudication of hearing proceedings .... 
while it consider[ed] appropriate action" in light of Bechtel. 
Public Notice, FCC Freezes Comparative Proceedings, 9 FCC 
Rcd 1055 (Feb. 25, 1994).

 In March 1994, acting upon the basis of Bechtel, we re-
versed the orders of the Commission granting Orion's license 
application and denying the applications of its competitors, 
and remanded the entire matter to the FCC for reconsidera-
tion. See Biltmore Forest Broadcasting FM, Inc. v. FCC, 
No. 92-1645 (Mar. 15, 1994). The previously rejected appli-
cants then petitioned the Commission to rescind the construc-
tion permit it had issued to Orion.

 Before ruling upon that petition the Commission on June 
27, 1994 issued to Orion yet a third construction permit, this 
time for a broadcast station in Asheville auxiliary to the 
primary FM station in Biltmore Forest. Orion then complet-
ed construction of its station, began to broadcast program 
tests, and on August 3, 1994 applied for an operating license. 
The next day the Commission acted to "clarify" its earlier 
Public Notice; it stated that "[w]here program tests have 
already commenced, operations may be continued so as not to 
deprive the public of existing service." Public Notice, Modi-
fication of FCC Comparative Proceedings Freeze Policy, 9 
FCC Rcd 6689 (Aug. 4, 1994). Because Orion had begun 
broadcasting before August 4, the Audio Services Division of 
the FCC later denied the request of Orion's competitors to 
rescind its construction permit.

 The rejected applicants sought reconsideration of their 
petition to rescind Orion's permit and also, acting as a 
nonprofit consortium under the name Biltmore Forest Radio 
Inc. (BFRI), themselves applied for joint interim operating 


authority. The Commission reversed the Audio Services 
Division and rescinded Orion's construction permit. Accord-
ing to the Commission, although Orion was "technically within 
the parameters described by the Public Notice [of August 4] 
for continued operation .... the Public Notice did not con-
template circumstances ... where an applicant did not com-
mence [broadcasting program tests] until more than four 
months subsequent to the court Order reversing the grant of 
that applicant's permit." Orion Communications, Ltd., 10 
FCC Rcd 13066 (Nov. 29, 1995). The Commission also 
instructed its staff to accept BFRI's application for joint 
interim operating authority pending the Commission's final 
grant of a license. Orion petitioned for reconsideration. The 
Commission denied the petition, explaining that Orion's con-
struction of the station and commencement of broadcasting 
was "clearly unreasonable" in light of this court's having 
earlier reversed and remanded the Commission's decision 
granting Orion's application. See Orion Communications, 
Ltd., 11 FCC Rcd 19589 (Oct. 22, 1996). BFRI began broad-
casting six months later, on June 2, 1997.

 II. Analysis

 We reverse a Commission decision granting or denying a 
broadcast license only if that decision is "arbitrary, capricious, 
an abuse of discretion, or otherwise not in accordance with 
law." 5 U.S.C. s 706(2)(A); see DirecTV, Inc. v. FCC, 110 
F.3d 816, 826 (D.C. Cir. 1997). The Commission's decisions 
in this case clearly fail to meet even this deferential standard.

 The Commission recognized that it had the "discretion to 
maintain [Orion's] existing service upon ... remand ... in 
order to avoid disruption of service to the public." See 11 
FCC Rcd 19589 (1996). In nonetheless rescinding Orion's 
authority to provide such service, the Commission abused its 
discretion and acted arbitrarily and capriciously in the follow-
ing respects: The Commission (1) erroneously concluded that 
Orion had been "clearly unreasonable" in proceeding with 
construction and broadcast tests after this court, in remand-
ing the case against Orion for reconsideration in the wake of 


Bechtel, had vacated the Commission's decision granting Or-
ion's license application; (2) created an unfounded exception 
to the general rule announced in its Public Notice of August 
4, 1994 that a station already broadcasting could continue to 
do so; (3) failed to follow the standards it had set for itself in 
47 C.F.R. s 73.3592(b), in that it considered neither the 
equities of the situation nor other aspects of the public 
interest; and (4) departed from its own recent precedent 
without providing a reasoned explanation for so doing.

A. Orion's conduct 

 The Commission argues that this court's remand of March 
15, 1994, by vacating the Commission order granting Orion's 
license, served automatically to revoke Orion's construction 
permit and that Orion therefore acted unreasonably in con-
tinuing to build its station. Orion argues first that it acted 
reasonably in continuing to build its station and alternatively 
that the FCC had to give it notice before the revocation of its 
license could take effect. We agree with the first point and 
so need not resolve the second.

 Orion reasonably inferred from the Commission's granting 
it a construction permit for an auxiliary station in June 
1994--well after our decision remanding the matter of its 
primary license for reconsideration after Bechtel--that its 
permit to construct the primary station was still valid. An 
auxiliary station is by its nature dependent upon there being 
a primary station, as the Commission's explanation accompa-
nying its grant of the auxiliary license makes clear. Further, 
the grant of the initial construction permit for the primary 
station had conferred upon Orion the authority not only to 
build the station but also, without obtaining further authoriza-
tion, to begin program tests, as Orion did on July 29, 1994. 
See 47 C.F.R. s 73.1620(a)(1).

 Orion acted reasonably not only in beginning but also in 
continuing to operate because the Public Notice of August 4, 
1994 by its terms authorized Orion to do so. Regardless of 
whether Orion acted reasonably, however, we do not see how 
the Commission could rationally conclude that Orion's conduct 


had been "clearly unreasonable." As we have seen, the 
Commission's staff denied BFRI's request to rescind Orion's 
permit precisely because it understood the Public Notice to 
authorize Orion's continued operation of the station. The 
Commission is of course at liberty to rule that its staff erred, 
but it cannot say in the present circumstance that Orion was 
clearly unreasonable to have come to the same arguably 
erroneous conclusion.

 Nor did Orion's competitors' filing a request for rescission 
make Orion's operation of the station unreasonable, as the 
Commission now argues; if it had, then every permit-holder 
that began to broadcast despite continuing appeals would be 
acting unreasonably. The provision of service to the public 
would be long delayed if successful applicants were required 
to wait until every last appeal was resolved before beginning 
to broadcast.

 We hold, therefore, that the Commission acted arbitrarily 
and capriciously in basing its decision to revoke Orion's 
interim operating authority in any part upon Orion's having 
acted unreasonably in building and operating its station.

B. Section 73.3592(b)

 Section 73.3592(b) states that the Commission "may, if the 
public interest will be served thereby," grant interim operat-
ing authority to a coalition of "two or more" competing 
applicants. In its decision the Commission took the position 
that this section applies to this competitive license proceed-
ing, and upon appeal argues that s 73.3592 actually requires 
that it authorize joint interim operation. Orion, in its reply 
brief, strenuously resists the notion that the regulation has 
any application to the present situation.

 By its terms, s 73.3592(b) seems to apply only to those 
cases in which a hearing is yet to be held. Contrary to the 
Commission's argument, our decision in Consolidated Nine 
did not extend the reach of this provision, but merely held 
that the Commission could not apply it to one applicant for 
interim operating authority while refusing to apply it to 


another applicant. See Consolidated Nine, Inc. v. FCC, 403 
F.2d 585 (D.C. Cir. 1968).

 The Commission's new characterization of s 73.3592, and 
its new reading of Consolidated Nine, are also inconsistent 
with its own recent decision permitting another broadcaster 
to continue operating on an interim basis after the grant of its 
license was reversed and remanded by this court pursuant to 
Bechtel. See Highlands Broadcasting Co., 9 FCC Rcd 5746, 
5747 (1994). In that case the Commission explained that 
Consolidated Nine had required the agency to conduct a 
further hearing after remand with new applicants and that "in 
the absence of those circumstances, precedent supported an 
order permitting the grantee to continue its existing ser-
vice.... [N]othing in Consolidated Nine ... would deprive 
us of the discretion to allow the existing service to continue if 
... termination of the service would not serve the public 
interest." Id. at 5747.

 In any event, s 73.3592(b) clearly requires the Commission 
to consider the public interest in deciding whether to award 
joint operating authority. Therefore, even if that section 
does apply--a matter that we need not decide today--the 
Commission was bound to consider the public interest before 
deciding to transfer interim operating authority from Orion to 
BFRI.

 The Commission has stated that the public interest is not 
served by "withdrawing ... existing local service from its 
listeners or by having ... existing facilities lie fallow." High-
lands Broadcasting Co., 9 FCC Rcd 5746, 5747 (1994); David 
J. Bott, 9 FCC Rcd 6426, 6427 (1994). Yet when the Commis-
sion rescinded Orion's interim operating authority, Orion was 
on the air and providing local service. The rescission disrupt-
ed that service, in derogation of the very interest that the 
Commission had sought to protect when it permitted all other 
stations broadcasting as of August 4 to continue doing so. 
BFRI was not ready to provide service when it applied for or 
when it received interim operating authority; indeed, it took 
six months to become ready, during which time the Commis-
sion looked to Orion to provide service to the public.


 The Commission has also found in the past that a signifi-
cant improvement in service must be counted in furtherance 
of the public interest. See Western Television Co., FCC 74-
753 (1974); see also Bechtel v. FCC, 10 F.3d 875, 882 (D.C. 
Cir. 1993) (integration criteria invalidated for failing to ad-
vance valid goal of "pick[ing] owners who are aware of and 
responsive to their communities' special needs"). Here the 
ALJ found that Orion's broadcasts would be produced by 
Zebulon Lee--who has spent more than 50 years broadcast-
ing in his community--and by Lee's wife and son, who also 
have many years of experience working at the family's former 
station in Asheville. (The family sold that AM station, as the 
Commission required, in the expectation of receiving their 
FM license). The ALJ also found that Mrs. Lee planned to 
devote her time at the FM station entirely to public affairs 
and public service, "ascertain[ing] local needs and problems" 
and then "plan[ning] and coordinat[ing] station public service 
activities and ... programs responsive to issues of concern in 
the station's service area." National Communications In-
dust., 5 FCC Rcd 2862 at 15. Both of these factors contribut-
ed to the ALJ's conclusion that Orion would "clearly ... offer 
the best practicable service to the public," id. at 19. None-
theless, the Commission did not explain why--or even wheth-
er--it thought BFRI would better serve the public's interest 
in responsive programming than would Orion.

 Indeed, we note that three of the four applicants in the 
BFRI consortium had been rejected as licensees in one way 
or another for lack of integrity: per the ALJ, one "lack[ed] 
the requisite character," another had submitted an "abjectly 
false" certification, and the third claimed a minority female 
owner whose role was merely "window dress[ing]" for the 
true owner's "sham" application. 5 FCC Rcd 2862 at 6, 20 
n.7, 12.

 The Commission has long recognized equitable factors as a 
component of the public interest. In RKO General, Inc., 
FCC 82-104 (1982), it permitted a broadcaster whose license 
it had revoked to keep operating pending the completion of 
appellate review in part because of its felt "responsibility to 
ensure a continuation of service to the people of the ... area; 


[and upon] considerations of equity and fairness with respect 
to the employees of the affected station." 

 In the current case, however, the "equities" received short 
shrift. In its first decision to displace Orion in favor of 
BFRI, the Commission stated only "we do not believe the 
equities here--where Orion clearly completed construction 
months after learning that its authorization was not valid and 
where other applicants stand ready to provide service them-
selves--weigh in Orion's favor." 10 FCC Rcd 13066, 13067 
(Nov. 29, 1995). Upon reconsideration, the Commission elab-
orated only to the extent of saying that it was "not persuaded 
by Orion's contention that equity favors its continued opera-
tion ... given that Orion completed construction after the 
court had reversed and a request for rescission had been 
filed." 11 FCC Rcd 19589, 19593 (Oct. 22, 1996).

 These abbreviated discussions entirely fail to consider any 
of the equitable factors that favor Orion. Orion had success-
fully defended its license for four years, readily rebuffing 
attacks launched by the rejected applicants. Indeed, Orion's 
license would probably have become final long before our 
decision in Bechtel unsettled the matter if only the rejected 
applicants had not, as the Commission found, filed "repeti-
tious" appeals, Liberty Prod., 8 FCC Rcd 4264 (1993), in 
order to "debat[e] matters on which [the Commission] ha[d] 
already deliberated and spoken." Liberty Prod., 7 FCC Rcd 
7581 (1992). Nor was this court's vacatur of the Commis-
sion's order granting Orion the license prompted by any fault 
of Orion's; rather, it was required by our invalidation in 
Bechtel of the Commission's integration criterion as arbitrary 
and capricious. See Biltmore Forest Broadcasting FM, Inc. 
v. FCC, No. 92-1645 (Mar. 15, 1994).

 In addition, Orion's investment in building the station in 
reasonable reliance upon the Commission's conditional grant 
of the construction permit, of a modification in November 
1993, and of an auxiliary permit in June 1994, weighs in favor 
of permitting Orion to continue operating until the license is 
finally granted. The Commission gave no weight to Orion's 
reliance interest on the ground that, when it initially sought 
the construction permit, Orion had accepted the risk that it 


would not get the license. True, but irrelevant. The risk 
that Orion accepted was that in the end it would not get the 
permanent license to operate. Based upon prior Commission 
practice, Orion reasonably expected that it could stay on the 
air at least until the Commission made a final decision in the 
matter--which it is yet to do. Even now Orion appeals only 
the rescission of its interim operating authority; Orion still 
bears the risk that it willingly accepted, namely, that it will 
not finally be awarded the license.

 The Commission's decision would, of course, be entitled to 
our deference had it reached a reasoned conclusion that the 
public interest factors favoring the award of interim operation 
authority to BFRI outweigh the public interest considerations 
favoring Orion's continued operation. As indicated above, 
however, the Commission's decision was based solely upon its 
misapprehension that Orion had behaved unreasonably. The 
resulting tilt in the Commission's weighing of the equities and 
its woefully partial consideration of the other components of 
the public interest make its decision arbitrary and capricious. 

C. The Public Notice

 The Commission acted arbitrarily in distinguishing Orion's 
situation from the situation contemplated in its Public Notice 
of August 4, 1994, which permitted then-operating stations to 
continue broadcasting. The only difference identified by the 
Commission is that Orion, unlike most other stations, did not 
begin operating until after the Commission had issued the 
freeze order of February 25, 1994, and we had remanded the 
challenge to its license in March 1994. As discussed above, 
however, the Commission erred in drawing an unfavorable 
inference from Orion's actions. Indeed, the Commission can 
hardly claim that the initial freeze order put Orion on notice 
that it should not begin broadcasting: if the first order had 
been clear, then the Commission would not have had to issue 
another order for the express purpose of clarifying it. 

D. Commission precedent

 The decision under review is also inconsistent with the 
Commission's previous decisions in Highlands and Bott. In 


Highlands the Commission stated that the public interest 
would be served by maintaining the status quo after we had, 
in light of Bechtel, reversed and remanded the Commission's 
licensing decision. See Highlands Broadcasting Co., Inc., 9 
FCC Rcd 5746 (1994). Although the Commission now at-
tempts to distinguish Highlands on the ground that the 
licensee in that case had begun broadcasting before the 
remand, it fails to explain how that difference is relevant 
here. Even if the Commission had justified rescinding Or-
ion's license as necessary in order to avoid benefitting the 
incumbent operator during the proceedings on remand--as 
the Commission now suggests it should have done--that 
rationale would seem to apply equally to an incumbent that 
had begun operating before the remand.

 Nor can the Commission distinguish its decision in Bott 
from the decision under review. There as here the initial 
licensee did not begin broadcasting program tests until after 
the remand. The Commission nonetheless permitted the 
licensee to remain on the air until the Commission reached a 
final decision. See Bott, 9 FCC Rcd 6426 (1994).

 Although the Commission is not necessarily bound by its 
prior decisions, particularly in cases where it must weigh the 
public interest and the equities in an individualized fashion, 
the Commission is bound to provide an explanation when it 
departs from a clear precedent. Here the Commission pro-
vided no such explanation of its prior inconsistent decision in 
Bott, which compels the conclusion that the Commission acted 
arbitrarily and capriciously in this case.* See New Orleans 
Channel 20, Inc., v. FCC, 830 F.2d 361, 366 (D.C. Cir. 1987). 

__________
 * In a footnote to its initial decision rescinding Orion's permit the 
Commission did attempt to distinguish Bott on the ground that the 
licensee in that case had begun operating before the remand. See 
Orion Communications, Ltd., 10 FCC Rcd 13066, 13067 n.6 (1995). 
Commission counsel now acknowledges, however, that "[u]pon a 
closer review of the facts in Bott" that case "is not in fact distin-
guishable" on this ground. Perhaps that is why upon reconsidera-
tion of its decision regarding Orion the Commission failed even to 
mention Bott. See Orion Communications, Ltd., 11 FCC Rcd 
19589 (1996).


E. Undue Delay

 This matter has been before the Commission for a long 
time--ten years since the license applications were filed--and 
still the Commission has not finally settled upon a licensee. 
In addition to reinstating it as the interim licensee, therefore, 
Orion asks us to order the Commission to expedite its final 
selection process. That we will not do, in part because the 
Congress has recently enacted legislation relevant to the 
timing of the Commission's final decision. Section 3002 of the 
Balanced Budget Act of 1997, P.L. 105-33 (Aug. 5, 1997) 
provides that, in any pending case involving mutually incon-
sistent license applications (such as this one) that has not 
been settled by February 1, 1998, the FCC may auction off 
the license. The Commission has represented to the court 
that it plans to act promptly to implement this legislation; 
specifically, the Commission has said it would commence 
rulemaking in November 1997 and adopt a Report and Order 
in January 1998. We take the Commission at its word.

 III. Conclusion

 The Commission rescinded Orion's interim operating au-
thority upon the erroneous premise that Orion had acted 
unreasonably in completing construction of and starting to 
operate its station. The Commission acted without regard to 
equitable considerations favoring Orion, other components of 
the public interest, or its own recent precedents. We there-
fore remand this matter to the Commission with instructions 
to reinstate Orion forthwith as the interim licensee pending 
such further proceedings as the Commission may conduct in 
order to choose either an interim or a final licensee. The 
Order under review is therefore

 Reversed.